UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **QUANIKA HAMMLER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-00474** |
| **MEDICAL TRANSPORTATION MANAGEMENT, INC.** | **SECTION "B" (1)** |

# ORDER AND REASONS

In this action, Plaintiff Quanika Hammler asserts claims against her former employer, Medical Transportation Management, Inc. ("MTM"), arising from her alleged wrongful termination. Specifically, she asserts: (1) retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; (2) interference under the FMLA; (3) defamation; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) violation of the Louisiana Wage Payment Act ("LWPA"), La. Stat. Ann. §§ 23:631–632; (7) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; (8) hostile work environment; and (9) promissory estoppel.

Before the Court are Defendant's Motion to Dismiss all claims (Rec. Doc. 5), Plaintiff's opposition (Rec. Doc. 10), and Defendant's reply (Rec. Doc. 14). For the following reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Rec. Doc. 5) is **GRANTED IN PART** and **DENIED IN PART** as follows:

The motion is **DENIED** as to Plaintiff's FMLA retaliation claim, FMLA interference claim, and LWPA claim.

The motion is **GRANTED** as to Plaintiff's defamation claim, intentional infliction of emotional distress claim, negligent infliction of emotional distress claim, FLSA claim, hostile work environment claim, and promissory estoppel claim.

**IT IS FURTHER ORDERED** that Plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, and promissory estoppel claims are **DISMISSED WITH PREJUDICE**; and that Plaintiff's FLSA, Defamation, and hostile work environment claims will be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to file, no later than 14 days from the issuance of this order, a motion for leave to amend her complaint to cure the deficiencies identified herein.

## I. FACTUAL BACKGROUND

Plaintiff Quanika Hammler was employed by Defendant Medical Transportation Management, Inc. ("MTM") on August 24, 2024 as a Remote Customer Service Representative. (Rec. Doc. 1 at 2.) On August 20, 2025, Plaintiff's father passed away, and she immediately requested bereavement leave pursuant to MTM's policy, allowing three days and additional two days for out of state travel. (Id. at 3.)

On August 20, Plaintiff also notified MTM of her requested leave under the Family and Medical Leave Act ("FMLA") for a personal medical condition as well as short-term disability paperwork through Aflac, which were both later approved. (Id. at 2.) Nine days later on August 29, 2025, while Plaintiff was on FMLA leave, Defendants terminated her employment after an internal investigation resulted in findings that she falsified her father's cremation and funeral records. (Id. at 3.)

## II. PROCEDURAL HISTORY

Plaintiff alleges that: (1) while she was on protected leave, MTM subjected her to hostile and retaliatory treatment; (2) on or about August 29, 2025, nine days after she invoked her FMLA rights and requested bereavement leave under company policy, MTM terminated her employment; (3) during the termination call, MTM management accused her of falsifying her father's cremation

and funeral records, which she alleges falsely accused her of criminal conduct and dishonesty; (4) the termination call occurred while she was at lunch and grieving her father's death, and her sister overheard the accusation; (5) MTM had previously interrupted her lunch periods and breaks for work-related purposes on numerous occasions; (6) immediately following her termination, MTM disabled her system access and locked her out of its work systems; and (7) MTM's accusation was false, made without a reasonable investigation and with reckless disregard for the truth, and, together with the close temporal proximity between her protected leave and termination, evidences a retaliatory motive. (Rec. Doc. 1 at 3.) Based on these allegations, Hammler filed Charge No. 461-2026-00105 with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on December 10, 2025. (Rec. Doc. 10-1.)

On March 5, 2026, Plaintiff filed the present complaint in this Court, alleging (1) FMLA Retaliation in violation of 29 U.S.C. § 2615(a) (2); (2) FMLA Interference in violation of 29 U.S.C. § 2615(a)(1); (3) Defamation in violation of La. Civ. Code art. 2315; (4) Intentional Infliction of Emotional Distress in violation of La. Civ. Code art. 2315; (5) Negligent Infliction of Emotional Distress in violation of La. Civ. Code art. 2315; (6) Unpaid wages in violation of the Louisiana Wage Payment Act, La. R.S. 23:631-632; (7) Unpaid wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 and entitled recovery under 29 U.S.C. § 216(b); (8) Hostile Work Environment claims in violation the American Disabilities Act ("ADA") and the Louisiana Employment Discrimination Law ("LEDL"); and (9) Promissory Estoppel. (Rec. Doc. 1 at 4-9.)

On May 22, 2026, MTM moved to dismiss the claims against it, arguing that Hammler failed to exhaust and timely file most of her claims and failed to state causes of action for which she could be afforded relief. (Rec. Doc. 5.) On June 16, 2026, Hammler filed her opposition to

MTM's motion to dismiss. (Rec. Doc. 10.) On June 22, 2026 MTM filed their memorandum in Support for their motion to dismiss. (Rec. Doc. 14.) All motions are ripe for adjudication.

## III. LAW AND ANALYSIS

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (discussing Fed. R. Civ. P. 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A complaint does not meet the plausibility standard "if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action."

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (citing *Twombly*, 556 U.S. at 555).

Although motions to dismiss are evaluated by the content in the complaint, the United States Supreme Court has described the extent of possible evidence: "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322 (2007) (citation omitted). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quotation omitted); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Analysis**

*i. FMLA Interference & Retaliation*

To prove FMLA retaliation, the employee must demonstrate: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2006)). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

Unlike Hammler's claim for retaliation, her interference claim does not require a showing of discriminatory intent. To establish a *prima facie* interference case, Hammler must show that (1) she was an eligible employee, (2) her employer was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) her employer interfered with, restrained, or denied her the benefits to which she was entitled under the FMLA, and (6) she was prejudiced. *See Acker*, 853 F.3d at 788.

As to interference, Hammler alleges that MTM hired her on August 24, 2024, and that she requested FMLA leave for a personal medical condition on August 20, 2025. (Rec. Doc. 1 at 2.) Although her request came four days before her one-year anniversary, eligibility is determined as of the date leave begins, and any FMLA-qualifying leave taken after the employee reaches twelve months of employment is FMLA leave. 29 C.F.R. § 825.110(d). Hammler therefore became eligible on August 24, 2025, while still on leave. Further, MTM approved her FMLA leave (Rec. Doc. 1 at 2), which confirms both that she gave proper notice and that MTM treated her as entitled to leave. On August 29, 2025, while Hammler was on approved FMLA leave, MTM terminated her. (Id. at 3.) Termination during protected leave denies the employee her right to be restored to her position upon return, 29 U.S.C. § 2614(a)(1), and she was prejudiced by the loss of her employment. Hammler's termination while on protected leave shows a plausible claim sufficient to satisfy *Twombly* that her entitlements to FMLA were interfered with.

As to retaliation, Hammler was protected under the FMLA as she requested and was granted FMLA leave (Rec. Doc. 1 at 2), and she was terminated while on FMLA leave which satisfies the requirement for adverse employment action. She was terminated nine days after requesting leave. (Id. at 3.) When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the "temporal proximity" between the

FMLA leave, and the termination. *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

Although MTM points to an internal investigation into Hammler's bereavement records to justify the termination, the Court need not heighten the pleading standard and scrutinize whether the termination was because of discrimination, the Court need only find that the facts alleged "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Taking Hammler's allegations as true, the timing and proximity show a plausible claim. Accordingly, Defendant's motion to dismiss Plaintiff's FMLA Retaliation Claim and FMLA Interference claim is **DENIED**.

*ii. Defamation*

Hammler fails to state a claim for defamation because she has not alleged that the challenged statements were published to a third party.

To state a claim for defamation, a plaintiff must allege (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher amounting to at least negligence; and (4) resulting injury. *See Costello v. Hardy,* 864 So. 2d 129, 139–40 (La. 2004). Hammler alleges that MTM falsely accused her of falsifying funeral records and that the accusation was published when her sister overheard the termination call and when multiple MTM supervisors discussed it. (Rec. Doc. 1 at 5; Rec. Doc. 10 at 5.) MTM argues that the statements are privileged under La. Stat. Ann. § 23:291(A) (2014) and that they were not published. Hammler responds that § 23:291(A) applies only to disclosures made to prospective employers after the employment relationship ends. (Rec. Doc. 10 at 6.) Because Hammler has not adequately alleged publication, the Court does not reach the scope of statutory immunity.

Under Louisiana law, "statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons." *Commercial Union Ins. Co. v. Melikyan*, 424 So. 2d 1114, 1115 (La. Ct. App. 1982). The *Melikyan* court derived this rule from *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196, [198] (La. 1980), in which the Louisiana Supreme Court held that statements made to an employee about an altered check, by and in the presence of supervisory personnel essential to the investigation, did not constitute publication. *Melikyan*, 424 So. 2d at 1115. In another case, the court, relying on *Cangelosi* and *Melikyan*, granted summary judgment for the employer where the plaintiff alleged that the employer's separation records falsely attributed his termination to failure to follow company guidelines and low sales, because the record contained no evidence that the information was circulated outside the company. *Marshall v. Circle K Corp.* 715 F. Supp. 1341, 1343 (M.D. La. 1989), *aff'd*, 896 F.2d 550 (5th Cir. 1990).

The Fifth Circuit has likewise stated that "[i]n Louisiana, statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons for the purposes of a defamation claim." *Williams v. United Parcel Serv., Inc.*, 757 F. App'x 342, 345 (5th Cir. 2018) (citing *Melikyan*, 424 So. 2d at 1115). In *Williams*, the plaintiff failed to report workplace injuries despite being told by a supervisor to do so. The plaintiff alleged that the supervisor lied about having told him to report his injuries, and those statements were the basis of the Defamation claim. *Id.* The district court dismissed the claims, and the Fifth Circuit upheld the District Court's ruling stating that the alleged defamatory statements were made exclusively within UPS's organizational structure during a company investigation and that under Louisiana Law this does not constitute publication. *Id.*

Hammler's allegations are consistent with the circumstances addressed in these cases. The challenged statements were communicated to Hammler during her termination and discussed among MTM supervisors acting within the scope of their duties. (Rec. Doc. 1 at 5.)

To the extent that Hammler alleges publication, and then only an instance where her sister overheard the phone call when she was terminated, a third party simply overhearing a phone call is not the equivalent to directing statements at the third party. *Cook v. Parish of Jefferson*, 2022 U.S. Dist. LEXIS 76, *31 (E.D. La. Jan. 3, 2022) ("[t]o be considered 'published,' for purposes of a defamation claim, statements must be made to a third party, other than the person allegedly defamed."). In *Cook* the court held that a plaintiff had not met their burden of showing publication when they merely alleged the statements were made at a hearing that was public in nature. *Id.* The court stated that the plaintiff failed to properly plead facts showing the hearings were public in nature. *Id.* Because Hammler has not plead facts indicating that MTM directed statements to a third party or any person outside the company she has failed to plead an essential element of her defamation claim. *See Williams*, 757 F. App'x at 345. Accordingly, Defendant's motion to dismiss Plaintiff's Defamation claim is **GRANTED**.

*iii. Intentional Infliction of Emotional Distress*

Hammler has only alleged a single incident of harassment by her employer MTM. (Rec. Doc. 1 at 3.) This single instance was their accusation, after conducting an investigation, that she forged her father's death-related documents. (Id.) The result of this determination was her termination. (Id.) This Court has held that for a claim of intentional infliction of emotional distress to succeed against an employer, there must be a pattern of harassment or abuse. For example, in *Martin v. American Midstream Partners, LP*, the extreme, albeit singular, instance of a noose being left on an African American employee's desk was not sufficient to show a pattern of harassment

or abuse. 386 F. Supp. 3d 733, 742 (E.D. La. 2019); *see also Harper v. Boise Paper Holdings, L.L.C.*, 575 F. App'x 261, 265 (5th Cir. 2014) (holding that plaintiff failed to state a claim for IIED when he alleged only a single incident, rather than a pattern of repeated harassment, and he did not allege that his employer intended to inflict the emotional distress he suffered); *Kell v. Iberville Bank*, 352 F. Supp. 3d 650, 663 (E.D. La. 2018) (dismissing plaintiff's claim for IIED because "the facts alleged do not permit an inference of a pattern of abuse—which Louisiana courts require a plaintiff to prove in a workplace intentional infliction of emotional distress claim").

Here, Hammler points to one instance of harassment or abuse, her being terminated after an internal investigation revealed she allegedly fabricated funeral documents for bereavement leave. Under Louisiana law this is insufficient to state a claim for intentional infliction of emotional distress. *See Kell*, 352 F. Supp. 3d at 663.

Additionally, a plaintiff who wishes to succeed on an intentional infliction of emotional distress claim against an employer must point to facts that show she suffered severe emotional distress and offer more than a conclusory statement that she suffered such distress. Under Louisiana law, serious emotional distress includes conditions such as neuroses, psychoses, chronic depression, phobia, and shock. *Delouise v. Iberville Par. Sch. Bd.*, 8 F. Supp. 3d 789, 810 (M.D. La. 2014) (citing to *Held v. Aubert*, 02–1486 (La. App. 1 Cir. 5/9/03), 845 So.2d 625, 634)).

Here, Hammler has not pointed to evidence to show that her emotional distress falls within the jurisprudential definition. *Delouise v. Iberville Par. Sch. Bd.*, 8 F. Supp. 3d 789, 810 (M.D. La. 2014). She only alleges that she did. (Rec. Docs. 1 at 5; 10 at 8.) Accordingly, Defendant's motion to dismiss Plaintiff's claim for intentional infliction of emotional distress is **GRANTED.**

*iv. Negligent Infliction of Emotional Distress*

Hammler has conceded (Rec. Doc. 10 at 9) Defendant's argument that Hammler's claim is barred as a matter of law by the Louisiana Workers' Compensation Act, which provides the exclusive remedy for any claim of negligence against an employer. (Rec. Doc. 5-1 at 15.) *See* La. Stat. Ann. § 23:1032(A).

Accordingly, Defendant's motion to dismiss Plaintiff's claim for negligent infliction of emotional distress is **GRANTED.**

*v. Fair Labor Standards Act*

The Fair Labor Standards Act sets a minimum wage and mandates that employers pay their hourly employees one and a half times their regular rate of pay for all hours worked in excess of 40 hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Section 216(b) provides hourly employees wrongly denied overtime wages a cause of action against an employer to recover those unpaid overtime wages, liquidated damages, and attorney's fees from their employers. 29 U.S.C. § 216(b).

To state a claim to recover unpaid overtime wages, the Fifth Circuit has reiterated, "a plaintiff must plausibly allege: (1) that an employer-employee relationship existed during the time that she worked in excess of forty hours per week; (2) that she engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021).

Hammler's allegations do not meet these requirements. She alleges only that she worked as a "Remote Customer Service Representative," (Rec. Doc. 1 at 2), but pleads no facts showing that her duties involved interstate commerce or that MTM is an enterprise engaged in commerce. *See* 29 U.S.C. §§ 203(s)(1), 207(a)(1). Hammler does not plead specific dates, wages, or an estimate of hours owed. A plaintiff need not plead precise amounts, attach a pre-discovery timesheet, or plead payroll-level calculations to survive Rule 12(b)(6). *See Molina-Aranda v. Black*

*Magic Enters., L.L.C.*, 983 F.3d 779, 788 (5th Cir. 2020) (finding allegations sufficient at the pleading stage to put the defendants on notice of the minimum and overtime wage claims where plaintiffs alleged that for "several pay periods during late August and September of 2015," they "worked 50 to 80 or more hours a week" but "were not paid fully or paid at all"). However, a plaintiff must do more than just recite the elements and announce coverage. *Id.* The Fifth Circuit has found, for example, allegations identifying specific weeks, with a month range and a statement of how many hours per week were worked, minimally sufficient. *Id.*

Accordingly, Defendant's motion to dismiss Plaintiff's claim for Unpaid Wages under the FLSA is **GRANTED**.

*vi. Louisiana Wage Payment Act Claims*

The LWPA provides:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

La. Stat. Ann. § 23:631(A)(1)(a) (2025).

Hammler alleges that MTM terminated her employment on August 29, 2025, and thereafter failed to pay all amounts due under the terms of her employment, including her final regular wages, by the next regular payday or within fifteen days of her discharge. (Rec. Doc. 1 at 7.)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts all well-

pleaded facts as true and views them in the light most favorable to the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

Accepting Hammler's allegations as true, she has pleaded facts that plausibly state a claim under the LWPA: she identifies the date of her discharge, the category of wages owed, and MTM's failure to pay those wages within the statutory period. Moreover, MTM's memorandum in support of its motion to dismiss does not discernibly address this claim or offer any argument for its dismissal. (*See* Rec. Doc. 5-1.) Accordingly, Defendant's motion to dismiss Plaintiff's claim for Unpaid Wages under the LWPA is **DENIED**.

*vii. Hostile Work Environment*

Hammler asserts disability discrimination claims under the Louisiana Employment Discrimination Law ("LEDL"). The LEDL's disability provisions are modeled after the Americans with Disabilities Act ("ADA"), and Louisiana courts analyze LEDL disability claims under the same substantive framework as ADA claims, relying on federal ADA jurisprudence for interpretive guidance. *Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785 fn. 3 (5th Cir. 2017). Accordingly, the Court analyzes Hammler's LEDL disability claims under the same standards governing her ADA claims.

At the outset Hammler's LEDL/ADA claims fail because Hammler has not pleaded exhaustion of her administrative remedies. (Rec. Doc. 10 at 10.) A plaintiff asserting an ADA claim must exhaust administrative remedies by filing a charge with the EEOC and obtaining a right-to-sue notice. *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378–79 (5th Cir. 2019) (*per curiam*) (*citing Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 77 (5th Cir. 1982). Hammler's Complaint does not allege that she filed any EEOC charge let alone one for hostile work environment under the ADA. (Rec. Doc. 1.) She also failed to plead that she received a

right-to-sue letter, or that she filed suit within the statutory time-delay window. (Id.) Her ADA hostile-work-environment claim therefore fails at the threshold.

Additionally, Hammler's hostile work environment claims under LEDL/ADA fail because the Court cannot plausibly conclude based on the factual allegations that Hammler had a qualifying disability under LEDL/ADA guidelines. To establish a *prima facie* case of disability-based harassment, a Plaintiff must demonstrate: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Credeur*, 860 F.3d at 795–96. Under the LEDL, a person qualifies as having a disability if they: (1) have a physical or mental impairment that substantially limits one or more major life activities; (2) have a record of such an impairment; or (3) are regarded as having such an impairment. La. Stat. Ann. §§ 23:322 (b) (9) (2025).

First, Hammler's complaint does not sufficiently state a physical or mental impairment that substantially limits one or more major life activities. The LEDL defines "impairment" as "an intellectual disability, any physical or physiological disorder or condition, or prior mental disorder or condition." *Id.* Louisiana courts have consistently held that an impairment qualifies as a disability only if it substantially limits a major life activity (i.e. caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, etc.), meaning the limitation is considerable or significant rather than merely minor, slight, or marginal. *See, e.g.*, *Beaumont v. Exxon Corp.*, 2002-2322 (La. App. 4 Cir. 3/10/04), 868 So. 2d 976; *McClain v. City of New Orleans*, 2013-1291 (La. App. 4 Cir. 3/5/14), 137 So. 3d 671. The Fifth Circuit has also long held that whether an individual is disabled depends not on the name or diagnosis of the

impairment, but rather the effects it has on an individual's life, requiring a plaintiff to plead facts showing how the impairment substantially limits a major life activity. *See, e.g.*, *Deas v. River W., L.P.*, 152 F.3d 471, 478 (5th Cir. 1998); *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011).

Although Hammler need not identify her specific diagnosed condition to survive a Rule 12(b)(6) motion, her claim that she suffers from "a serious health condition that substantially limits one or more major life activities, qualifying her as a disabled individual" (Rec. Doc. 1 at 8) is insufficient. Because Hammler pleads only the conclusory assertion that her impairment substantially limits a major life activity, without alleging facts showing the nature, severity, duration, or effect of the limitation, the Court cannot evaluate whether the alleged impairment is "substantially limiting" within the meaning of the statute. Accordingly, Hammler fails to state a plausible disability claim under the first prong. As the Fifth circuit explained, "[a]bsent allegations that [Plaintiff's] ailments substantially limited [her] in the performance of a major life activity, [Plaintiff] has failed to state a claim for relief under subsection A of the ADA's definition of disability." *Hale v. King*, 642 F.3d at 501.

Second, Hammler's complaint does not include record of a physical or mental impairment that substantially limits one or more major life activities. While Hammler may be able to point to a record of impairment, she does not plead any facts for the court to consider its impact. Therefore, "[Plaintiff's] allegations are flawed under subsection B for the same reason that they are flawed under subsection A—[Plaintiff] failed to allege facts from which we can reasonably infer that [Plaintiff's] medical conditions substantially limited a major life activity." *Id.* at 502.

Third, based on the pleaded facts, Hammler cannot be considered as being "regarded as having such an impairment." Under the current standard, a plaintiff establishes a "regarded as" claim by showing that the employer perceived the plaintiff as having an impairment and took

adverse action on that basis. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015). However, this prong does not apply to impairments that are transitory (actually or expected to be six months or less) and minor. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). While the Fifth Circuit has not determined whether the transitory-and-minor exclusion is an element of the plaintiff's *prima facie* case or an affirmative defense for the employer, it has concluded that an impairment may be considered objectively transitory and minor where the actual or expected duration of the impairment is less than six months and the record objectively establishes that the impairment is temporary and minor in nature. *Id.* at 303.

Hammler states in her complaint that, "[o]n or about August 20, 2025, Plaintiff put Defendant MTM on notice of her disability by requesting protected medical leave and submitting short-term disability paperwork to accommodate her condition." (Rec. Doc. 1 at 9.) Based on the record, with nothing provided to the contrary, it objectively appears that the impairment is short term in nature. Even if MTM "regarded her as disabled" based on her impairment, with nothing in the complaint describing her impairment as being expected to last six months or longer, Hammler has failed to allege that she was disabled under subsection C of the ADA's definition of disability.

While Hammler claims that the complaint meets the *Swierkiewicz/Patrick* fair notice standard, she fails to address that it must also satisfy *Twombly/Iqbal's* plausibility standard. *Swierkiewicz v. Sorema N.A.*,534 U.S. 506, 512 (2002); *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004). The Fifth Circuit has held that while plaintiffs in employment discrimination complaints do not have to submit evidence of a *prima facie* case at the pleading stage, they must still, "plead sufficient facts on all of the ultimate elements of such claim to make [their] case plausible." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762 (5th Cir. 2019); *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595 (5th Cir. 2021). Because we cannot plausibly conclude based on

the factual allegations that Plaintiff had a qualifying disability under LEDL/ADA guidelines, Plaintiff did not meet their pleading burden. Accordingly, Defendant's motion to dismiss Plaintiff's claim for Hostile Work Environment under the ADA and LEDL is **GRANTED**.

*viii. Detrimental Reliance*

Plaintiff brings claims for "Promissory Estoppel", asserting that she detrimentally relied upon the MTM's bereavement leave policy and the granting of the leave. Under Louisiana Law the doctrine of Promissory Estoppel is referred to as Detrimental Reliance. *See generally Brown v. Phoenix Life Ins. Co.*, 843 F. App'x 533, 545 (5th Cir. 2021). A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. La. Civ. Code Ann. art. 1967 (2025). Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable. *Id.*

To state a claim for detrimental reliance, a plaintiff must establish three elements: "(1) a representation by conduct or word; (2) justifiable reliance on the representation; and (3) a change in position to one's detriment because of the reliance." *Cenac v. Orkin, L.L.C.*, 941 F.3d 182, 198 (5th Cir. 2019). Consistent with the text of Article 1967, a plaintiff must also plead that "the defendant knew or should have known that the promise would induce the plaintiff to rely on it to [their] detriment." *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 290 (5th Cir. 2024) (citing *Wooley v. Lucksinger*, 2006-1167 (La. App. 1 Cir. 5/4/07); 961 So. 2d 1228, 1238).

Applying Louisiana law, the Fifth Circuit has held that an employer's staff handbook did not create enforceable rights on which the employee could rely. *Gilbert v. Tulane Univ.*, 909 F.2d 124, 126 (5th Cir. 1990). In *Gilbert*, the plaintiff argued that Tulane's Staff Handbook modified

his at-will employment status and gave him a contractual right to invoke its grievance procedures. *Id.* He contended that the handbook extended this right to all "staff employees," that he qualified as a "staff employee" under the handbook's definition, and that he was therefore entitled to a grievance proceeding. *Id.* He further argued that Louisiana courts had found staff handbooks to create contractual rights in other cases. *Id.* The Fifth Circuit rejected these contentions. *Id.*

In reaching that conclusion, the Fifth Circuit relied on *Wall v. Tulane University*, 499 So. 2d 375 (La. Ct. App. 1986), *writ denied*, 500 So. 2d 427 (La. 1987), in which the Louisiana Fourth Circuit Court of Appeal held that the same Tulane Staff Handbook was not a contract of employment. *Id.* at 375–76. The *Wall* court determined that the handbook was "primarily informational in nature and did not . . . constitute a binding promise by Tulane to continue indefinitely the benefits described therein." *Id.* at 376. The court also noted that Tulane had made no promises to Wall regarding those benefits that would have made them "part of Wall's employment agreement with Tulane." *Id.*

Here, the bereavement policy, and the leave granted under it, were benefits afforded to Hammler as an incident of her employment. Like the handbook in *Gilbert* and *Wall*, such a policy does not "constitute a binding promise . . . to continue indefinitely the benefits described therein." *Gilbert*, 909 F.2d at 126 (quoting *Wall*, 499 So. 2d at 376). Hammler identifies no separate contract or promise beyond the leave MTM granted under its generally applicable policy. She therefore fails to state a claim for detrimental reliance upon which relief can be granted. Accordingly, Defendant's motion to dismiss Plaintiff's claim for detrimental reliance is **GRANTED**.

New Orleans, Louisiana, this 16th day of October 2026

Senior United States District Judge